IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| KAREN HYLTON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) Case No. 21-CV-02673-JMC |
| v. | ) JURY TRIAL DEMANDED |
| | ) |
| THE DISTRICT OF COLUMBIA; and | ) |
| OFFICER CHRISTOPHER DELISI, in | ) |
| his individual capacity, | ) |
| | ) |
| Defendants. | ) |

**SECOND AMENDED COMPLAINT**

1. On the night of November 14, 2020, Plaintiff Karen Hylton was painting the side of a house in Brightwood Park. She was painting the house, with the permission of the owner, to honor the memory of her son, Karon Hylton-Brown, who had been murdered by police officers less than a month earlier. Defendant Officer Christopher Delisi was dispatched to the parking lot next to the house Hylton was painting. As Delisi approached Hylton, he asked her whose house she was painting, and Hylton said she was allowed to paint it, which she was. Hylton, enraged by the murder of her son, exchanged some harsh words with Delisi, turned back towards the wall, and began painting it with her right hand. Without notice, Delisi jogged up to Hylton, hit her right arm, grabbed it in his hand, twisted it behind her back, and kneed her in the side. Moments later, a crowd descended on the two of them and pried Hylton from Delisi's grasp. Hylton left the exchange with bruises on her side and face. Because Delisi seized her without reasonable suspicion of any crime—she was spray-painting a house with permission, which Delisi knew—he violated the Fourth Amendment to the United States Constitution and committed battery in violation of District of Columbia law.

**Parties**

2. Karen Hylton is the mother of Karon Hylton-Brown. She was seized without justification while painting a home with the permission of its owner to honor Karon's memory.

3. The District of Columbia is a municipal corporation formed under Article I of the United States Constitution. It is sued, under D.C. law only, as *respondeat superior* for the conduct of its officer.

4. Christopher Delisi is an officer with the Metropolitan Police Department of the District of Columbia. He is sued in his individual capacity for violating Hylton's rights under color of law in violation of 42 U.S.C. § 1983 and for battery under D.C. law.

### Jurisdiction and Venue

5. This Court has subject-matter jurisdiction over the federal claims in this case pursuant to 28 U.S.C. § 1331 and may exercise supplemental jurisdiction over the claims brought under District of Columbia law pursuant to 28 U.S.C. § 1367.

6. This Court has personal jurisdiction over Defendants because they committed the acts alleged within this District.

7. Venue is proper in this Court because the events alleged in this Action occurred in this District.

8. On April 23, 2021—less than six months after the incident in question in this Complaint—Hylton noticed the D.C. Office of Risk Management and Mayor Muriel Bowser by certified mail of the time, place, cause, and circumstances of the injuries she suffered as required by D.C. Code § 12-309.

### The Death of Karon Hylton-Brown and Its Aftermath

9. On the night of October 23, 2020, Karon Hylton-Brown borrowed a moped from a friend. He was looking on the streets and sidewalks of Brightwood Park for his car keys, which he had misplaced earlier in the evening.

10. As Karon began his search, then–MPD Officer Terence Sutton, who knew Karon and had harassed him in the past, saw him riding without a helmet, recognized an opportunity, and circled his car to pursue.

11. Karon, fearful of Sutton, rode away on the moped.

12. Sutton and then-Lieutenant Andrew Zabavsky chased Karon, driving their cars around the area of Kennedy Street between 4th and 7th Streets, Northwest, for more than three minutes, in violation of the laws and regulations of the District of Columbia and in conscious disregard for an extreme risk of death or serious injury to Karon and others.

13. Karon was struck by an oncoming vehicle as he exited the alley connecting the 700 blocks of Jefferson and Kennedy Streets. The impact threw him about twelve feet off the moped and onto the ground, where blood pooled around his head after it struck the pavement.

14. Sutton—who has since been charged with murdering Karon, conspiring to cover it up, and obstructing justice—slowly walked up to his body, and, despite seeing the obvious severity of his injuries, calmly went about his business as Karon lay dying.

15. Karon was found with $3,156 in his pants pocket when he was admitted to the hospital. He died two days later, on October 25, 2020.

**Delisi Twists Hylton's Arm And Knees Her in The Side Without Any Suspicion That She Was Committing a Crime**

16. On November 19, 2020, at around 6:15 PM, Hylton was with a friend in a parking lot running south from the southeast corner of 5th Street NW and Kennedy Street NW, in Brightwood Park.

17. Hylton was in the parking lot to paint the north-facing wall of a row house at the southern end of the parking lot.

3

18. The occupant of that house was a friend of Karon's. That friend was away from town attending college, but his mother, who owns the house, told Karen that she could paint the wall to honor Karon.

19. Delisi arrived at the scene in the back of a police van with several other officers. They parked the van on the west side of 5th street, across from the parking lot. Throughout the encounter, Delisi was wearing a body-worn camera issued by MPD with the serial number X6039BF0Q.

20. Delisi and the other officers got out of the van, and Delisi walked up first to Hylton.

21. As Delisi crossed 5th street, he saw Hylton painting the wall at the end of the parking lot. Hylton was accompanied by a friend who was watching her paint.

22. The body-worn camera footage shows Delisi moving his hands over the camera and pushing a button as he crosses the street. Delisi deactivated the body-worn camera by pushing the button, and therefore no audio was recorded for the first ten or so seconds of his interaction with Hylton.

23. During those ten seconds, Hylton asked Delisi why he had turned off his body-worn camera.

24. Delisi asked Hylton what she was doing, and told her she shouldn't be painting the wall.

25. Hylton told Delisi that she had the occupants' approval to do so.

26. Delisi then pushed the camera button again, and the audio recording began.

4

27. After a short back and forth in which Hylton questioned why Delisi turned off his camera and Delisi told her he had just turned it on, Delisi said "we're just trying to talk to you."

28. "You're not trying to talk me," Hylton said. "You're trying to tell me what I cannot do. You cannot kill my son!"

29. Hylton became increasingly upset as she spoke, yelling "you cannot kill my fucking son!"

30. Throughout the interaction, Hylton was a safe distance away from Delisi. Although she was shouting, at no point did she threaten him or approach him. For much of the conversation, Hylton's friend, who uses a wheelchair, was between Hylton and Delisi.

31. Hylton then turned away from Delisi, walked up to the wall, and began painting it with white spray paint.

32. Delisi walked towards her and said either "hey you can't do that" or "you ain't doing that."

33. Delisi walked up to Hylton as she was spray painting with her right hand, pushed her on her left shoulder, and struck her on her right arm.

34. "Yo!," Hylton exclaimed, and turned back towards Delisi.

35. Delisi then turned Hylton back towards then wall, pushed her left shoulder, and kneed her right side, as other officers descended on Hylton as well.

36. Delisi pinned Hylton to the wall such that she could not walk away.

5

37. A crowd of young men who had gathered in the parking lot then came towards Delisi and Hylton and pulled her away from him and the other officers.

38. At no point did any of the officers tell Hylton to "stop," ask her to drop the paint can, or give her any specific command.

39. At no point did any of the officers attempt to arrest Hylton.

40. After Hylton left the scene and the crowd subsided, Delisi walked back over to the van and called his lieutenant to explain what happened.

41. He told the lieutenant, whom he addressed as "L.T.," that Hylton was the mother of Karon Hylton-Brown, in whose name protests had sprung up all over Brightwood Park over the preceding few weeks.

42. Delisi told his lieutenant that Hylton "said she lived" at the house she was painting, but that Delisi did not "know her to live there."

43. In fact, Hylton did not live there, nor did she say so. She said that she was allowed to paint the house, which she was.

44. At several points after the incident, Delisi rhetorically asked his lieutenant and other officers on the scene why they had been dispatched to that parking lot in the first place.

45. Delisi told another officer on the scene that he when he arrived he was "trying to be cool with them" and "told them [Hylton and her friend] that they can't spray paint here." Only when Hylton started "cursing him out" and "turning to spray paint the wall," Delisi "went to try to grab the spray paint from her," at which point

6

Hylton "started fucking turning around." The words "turning around" are hard to understand on the recording.

46. No law or rule forbids spray painting private property with permission of the owner.

## Claims for Relief

### *Count One*: Unreasonable Seizure in Violation of The Fourth Amendment Under 42 U.S.C. § 1983 (Against Delisi Only)

47. All prior paragraphs are incorporated here by reference.

48. No reasonable officer could have believed that he had reasonable suspicion to seize Hylton under the circumstances because Hylton had authorization to paint where she was painting and told Delisi that she had this authorization.

49. Still, Delisi restrained Hylton's freedom of movement by pushing and grabbing her.

50. Delisi therefore violated Hylton's Fourth Amendment right to be free from unreasonable seizure.

### *Count Two*: Excessive Force in Violation of The Due Process Clause Under 42 U.S.C. § 1983 (Against Delisi Only)

51. All prior paragraphs are incorporated by reference here.

52. Delisi intentionally struck Hylton causing harmful and offensive physical contact to her body.

53. Delisi's conduct was not reasonably necessary under the circumstances because, among other things, he had no reason to arrest Hylton and was not, in fact, attempting to arrest her.

7

54. No reasonable officer could have believed that Delisi's conduct was reasonable under the circumstances because Delisi had no suspicion, reasonable or otherwise, that Hylton was committing a crime or posed a danger to others.

### *Count Three*: **False Arrest**

55. All prior paragraphs are incorporated here by reference.

56. No reasonable officer could have believed that he had reasonable suspicion to seize Hylton under the circumstances because Hylton had authorization to paint where she was painting and told Delisi that she had this authorization.

57. Still, Delisi restrained Hylton's freedom of movement by pushing and grabbing her.

58. He had no privilege to do so because any reasonable officer in this situation would have known that he lacked any suspicion, reasonable or otherwise, that Hylton was committing a crime or posing a threat to anyone.

59. Alternatively or additionally, he had no privilege to do so because he subjectively knew that he lacked reasonable suspicion that Hylton was committing a crime or posing a threat to anyone.

### *Count Four*: **Retaliation in Violation of The First Amendment**

60. All prior paragraphs are incorporated by reference here.

61. Hylton engaged in protected speech by verbally criticizing MPD's murder of her son and Delisi's conduct.

62. Hylton was further engaged in protected speech when she was painting the wall with permission to do so.

63. Delisi was motivated to seize Hylton because of her protected speech.

64. Delisi, who was initially "trying to be cool" with Hylton, seized her because she "started cursing [him] out" and "trying to spray paint the wall."

65. Delisi had no reasonable suspicion to seize Hylton.

### *Count Five*: Battery

66. All prior paragraphs are incorporated here.

67. Delisi, acting within the scope of his employment by the District of Columbia, intentionally struck Hylton causing harmful and offensive physical contact to her body.

68. Delisi's conduct was not reasonably necessary under the circumstances because, among other things, he had no reason to arrest Hylton and was not, in fact, attempting to arrest her.

69. He had no privilege to do so because any reasonable officer in this situation would have known that he lacked any suspicion, reasonable or otherwise, that Hylton was committing a crime or posing a threat to anyone.

70. Alternatively or additionally, he had no privilege to do so because he subjectively knew that he lacked reasonable suspicion that Hylton was committing a crime or posing a threat to anyone.

### Prayer for Relief

Plaintiff Karen Hylton respectfully requests:

- An award of compensatory damages against Defendants to be determined by a jury;
- An award of reasonable attorneys' fees and costs under 42 U.S.C. § 1988; and
- All other relief that this Court considers just and proper.

>Respectfully submitted,
>
>*/s/ Charles Gerstein*
>Charles Gerstein
>GERSTEIN HARROW LLP
>810 7th Street NE, Suite 301
>Washington, DC 20002
>charlie@gerstein-harrow.com
>(202) 670-4809
>
>*/s/ Jason Harrow*
>Jason Harrow
>GERSTEIN HARROW LLP
>3243B S. La Cienega Blvd.,
>Los Angeles, CA 90016
>jason@gerstein-harrow.com
>(323) 744-5293